UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHANNON H.,

        Plaintiff,

    -v-                          5:22-CV-1171

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

OLINSKY LAW GROUP           HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY              HUGH DUN RAPPAPORT, ESQ.
   ADMINISTRATION            Special Ass't U.S. Attorney
Attorneys for Defendant
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

DAVID N. HURD
United States District Judge

**DECISION & ORDER**

## I. INTRODUCTION

On November 9, 2022, plaintiff Shannon H.[1] ("plaintiff" or "claimant") filed this action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

The Commissioner has filed a certified copy of the Administrative Record and the parties have briefed the matter in accordance with General Order 18, which provides that an appeal taken from the Commissioner's final decision denying benefits will be treated as if the parties have filed cross-motions for a judgment on the pleadings. *See* FED. R. CIV. P. 12(c).

Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. BACKGROUND

On May 14, 2020, plaintiff applied for DIB and SSI alleging that her mental health problems, fibromyalgia, bulging discs, hypothyroidism, psychosis, post-traumatic stress disorder, bipolar disorder, general anxiety

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

disorder, asthma, chronic obstructive pulmonary disease, esophagus ulcers, fast heart rate, depression, herpes, and insomnia rendered her disabled beginning on January 13, 2020. R. at 90–91.[2]

Plaintiff's claim was initially denied on August 25, 2020, R. at 104, 120, and denied again after reconsideration on September 15, 2021, *id*. at 147, 172. At plaintiff's request, a video hearing was held before Administrative Law Judge ("ALJ") Todd Holbrook on June 14, 2022. *Id*. at 53–87. Plaintiff, represented by attorney Chelsea Rengel, appeared and testified. *Id*. The ALJ also heard testimony from Vocational Expert Nancy Gilpatrick. *Id*.

On July 26, 2022, the ALJ issued a written decision denying plaintiff's application for benefits. R.at 14–36. The ALJ's decision became the final decision of the Commissioner on October 4, 2022, when the Appeals Council denied plaintiff's request for review. *Id*. at 1–6.

## III. **LEGAL STANDARD**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

[2] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520.[3] At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." § 404.1520(a)(4)(i). If so, the claimant is not disabled regardless of his medical condition or other factors. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities. § 404.1520(c).

---

[3] Section 404.1520 sets forth the five-step evaluation used for DIB claims. A parallel set of regulations govern SSI applications. *See* 20 C.F.R. § 416.920(a)(4).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings"). § 404.1520(d). If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors. § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work." § 404.1520(e)–(f). If so, the claimant is not disabled. § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy. § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five. *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the

"Agency"). 42 U.S.C. § 405(g). However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up). "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Thus, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). This is so regardless of whether or not the decision is otherwise supported by "substantial evidence." *See id.*

## IV. **DISCUSSION**

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since January 13, 2020, the alleged onset date; (2) plaintiff's fibromyalgia, cervical and thoracolumbar degenerative disc disease; thoracolumbar dextroscoliosis; obesity; substance use disorder; schizoaffective disorder; psychotic disorder; depressive disorder; PTSD; and polysubstance use disorder were "severe" impairments within the meaning of the Regulations; and (3) these severe impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 22–25.

At step four, the ALJ determined that plaintiff retained the RFC to perform "light work" with some additional restrictions; *i.e.*, except that:

> she can frequently balance and can occasionally climb, stoop, kneel, crouch and crawl; she must avoid concentrated exposure to "atmospheric conditions" [as defined in the SCO]; she is limited to performing simple tasks within a normal work schedule; she can interact appropriately with supervisors and coworkers, but not with the public; she can adapt to normal changes in a routine of simple tasks.

R. at 25.

Next, the ALJ determined that plaintiff's RFC meant that she could not perform her past relevant work as a waitress. R. at 34. However, after considering plaintiff's age, education, and work experience in light of the RFC

and the Vocational Expert's testimony, the ALJ found that plaintiff could still perform jobs such as a "marker," a "collator operator," or an "inspector hand packager." R. at 34–35. Because these representative jobs existed in significant numbers in the national economy, the ALJ concluded that plaintiff was not disabled between January 30, 2020, the alleged onset date, through July 26, 2022, the date of his written decision. *Id.* at 35. Accordingly, the ALJ denied plaintiff's application for benefits. *Id.*

### A. **Plaintiff's Appeal**

Plaintiff contends that the ALJ failed to adequately consider the opinion evidence in light of the fluctuating nature of her mental condition; *i.e.*, her schizoaffective disorder, and how this condition interacts with her history of substance use. Pl.'s Mem., Dkt. No. 10 at 5–9. Plaintiff argues that the ALJ erroneously concluded that plaintiff's symptoms were exacerbated by periods in which she engaged in illicit drug use. *Id.* In plaintiff's view, her periods of drug use are better understood as a *symptom*, rather than a *cause*, of her severe mental symptoms. *Id.* According to plaintiff, evidence in the record shows that her impairments persisted even during periods of sobriety. *Id.*

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her

limitations.'" *Tammy B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (citation omitted). "The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Nedzad O. v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 37, 45 (N.D.N.Y. 2021) (citation omitted). "In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy B.*, 382 F. Supp. 3d at 192–93.

As the Commissioner recognizes in his opposition, plaintiff's appeal involves both a narrower, focused challenge to the ALJ's treatment of the opinion evidence and a broader, more holistic argument that relies on the interplay between plaintiff's mental impairments and her substance abuse.

First, in narrow terms, plaintiff challenges the ALJ's decision to discount the medical opinions rendered by her treating providers: Psychiatric Nurse Practitioner Lanesha Eudell and Dr. Yola Augustin. Both of these providers submitted medical source statements that, generally speaking, assessed a complex set of significant, ongoing mental restrictions that were beyond what the ALJ ultimately assessed in his RFC. R. at 2884–2889 (March 8, 2022 from NP Eudell); R. at 3086–3090 (May 15, 2022 from Dr. Augustin).

Historically, the Regulations divided evidence from medical sources like Dr. White and Dr. Shapiro into three categories: (1) treating; (2) acceptable; and (3) other. Under this old, category-based approach, an opinion from a "treating source" enjoyed special treatment: it received *controlling* weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy B.*, 382 F. Supp. 3d at 193.

However, on January 18, 2017, the SSA revised the rules regarding the way it evaluates evidence from medical sources. Under these new rules, "no particular deference or special weight is given to the opinion of a treating physician." *Nedzad O.*, 577 F. Supp. 3d at 46. Instead, the ALJ evaluates the persuasiveness of a medical opinion based on its: (1) supportability; (2) consistency with other evidence; (3) the source's relationship[4] with the claimant; (4) the source's area of specialization; and (5) other relevant case-specific factors "that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

---

[4] This "relationship" factor includes (i) the length of the treating relationship; (ii) the frequency of examination; (iii) the purpose of the treating relationship; (iv) the extent of the treating relationship; and (v) whether the source examined the claimant. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

The most important factors are <u>supportability</u> and <u>consistency</u>. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Although the Regulations obligate the ALJ to explain these two specific factors, "an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly." *Nedzad O.*, 577 F. Supp. 3d at 46 (quoting *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)).

Upon review, the ALJ did not err in his analysis of the opinions rendered by NP Eudell or Dr. Augustin. As is often the case, the ALJ was faced with a situation where the treating and consulting medical opinions offered sharply conflicting views on the nature and extent of plaintiff's mental limitations.

The ALJ correctly noted that NP Eudell and Dr. Augustin both assessed a set of significantly limiting (and likely fully disabling) mental restrictions. R. at 31–33. The ALJ dutifully evaluated the persuasiveness of both of these opinions in accordance with the new Regulations. Among other things, the ALJ engaged in a fairly detailed discussion of the relative *supportability* and *consistency* of these two opinions against the provider's findings and against the record as a whole.

Ultimately, the ALJ discounted both provider's opinions. R. at 31 (finding Dr. Augustin's opinions "largely unpersuasive"); R. at 32 (finding NP Eudell's opinions "unpersuasive"). The ALJ chose instead to rely on the combined

force of opinions from State Agency consultants and from an opinion rendered by Jeanne Shapiro, Ph.D, a consulting psychologist who examined plaintiff on August 17, 2020. R. at 30 (citing R. at 1984–88). As relevant here, the ALJ's summary of the record evidence led him to conclude that plaintiff's drug use seriously exacerbated her mental symptoms. R. at 33 (noting that "numerous exams . . . confirmed normal findings" when plaintiff was "not acutely under the influence of illicit substances").

In short, there was no error in the ALJ's treatment of these opinions. But his bottom-line conclusion about the effect of plaintiff's substance abuse on her mental condition forms the basis of her second, broader challenge to the ALJ's treatment of her claim. In plaintiff's view, the ALJ mischaracterized the unstable nature of her schizoaffective disorder, "which both fluctuates and can lead to substance use disorders." Pl.'s Mem. at 5. According to plaintiff, there is evidence of "symptomatic behavior, while sober" that indicates her severe mental symptoms did—and would—persist regardless of whether she successfully abstained from illicit drug use. *See id.* at 5–9.

This argument must also be rejected. Where, as here, there are mental impairments involved, it can be difficult to assess how a claimant's condition would translate into a work setting. *See, e.g.*, SSR 85-15 ("Individuals with mental disorders often adopt a highly restricted and/or inflexible lifestyle within which they appear to function well."). For instance, as plaintiff points

out, Dr. Shapiro only examined plaintiff on one occasion, which provided only a snapshot of plaintiff's functioning at a given time. Pl.'s Mem. at 9.

But a review of the ALJ's written decision shows that he was well aware of the "fluctuating" nature of plaintiff's mental symptoms. The ALJ's written opinion carefully walks through a substantial portion of the longitudinal evidence in the record: he discusses the circumstances surrounding plaintiff's psychiatric hospitalization in early 2020, evaluates exams and findings from 2020 and 2021, when plaintiff was taking cocaine and seeking other illicit drugs, and notes that in more recent records plaintiff "continued to abuse substances throughout the adjudicatory period." R. at 27–29.

The ALJ noted that plaintiff's mental conditions appeared to be well-controlled during periods in which she complied with treatment (including her prescribed psychiatric medications) and that the periods in which she abstained from substance abuse produced much less severe findings. R. at 29–33. Indeed, even follow-up notes from the so-called "Cove Forge Incident" in early 2020 (where plaintiff attacked a staff member) reflect that, once she abstained from cocaine use and received appropriate medication, plaintiff's mental symptoms stabilized and improved. Def.'s Mem., Dkt. No. 14 at 8–9.

Plaintiff challenges the ALJ's conclusion with citations to other evidence in the record that, in her view, support a more restrictive RFC regardless of the substance use disorder issue. But the ALJ considered the voluminous

record in this case and came away with the firm impression that plaintiff's ongoing substance abuse heavily impacted her ability to handle the mental demands of work. *Cf. Dorothy B. v. Comm'r of Soc. Sec.*, –F. Supp. 3d–, 2023 WL 5992265, at *4 (W.D.N.Y. Sept. 15, 2023) (explaining that the Act precludes a finding of disability of drug addiction is a material, contributing factor). Thus, the ALJ focused on the record evidence from periods in which plaintiff had abstained from drug use. *Cf. Ervin-Atkinson v. Comm'r of Soc. Sec.*, 2020 WL 830434, at *2 (W.D.N.Y. Feb. 20, 2020) (noting that evidence from periods of abstinence is valuable in determining whether impairments would improve). From those periods of apparent abstinence, the ALJ pieced together an RFC that was less than fully disabling at step five.

In reply, plaintiff reiterates the "fluctuating" nature of her mental condition and argues that "one-time" examinations, such as the one that Dr. Shapiro conducted, are of "diminished" value in assessing the nature and extent of her mental limitations. Pl.'s Reply, Dkt. No. 15 at 1–5. Plaintiff builds on this argument to point to other instances of one-off records that, in her view, misleadingly give the impression that her condition improved. *Id.*

These arguments do not warrant remand. "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the

claimant's position also exists." *Julie B.*, 578 F. Supp. 3d at 349 (quoting *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020).

The Court acknowledges that plaintiff's mental condition appears to be a challenging one to assess. But that is the role of the ALJ in this setting. In his written decision, the ALJ took on this challenge, reviewed and discussed salient portions of the extensive record evidence that weighed *for* and *against* the conclusion that plaintiff would have been severely limited regardless of her illicit drug use, and reached a series of reasonable judgment calls based on the conflicting evidence. Those kind of reasonable judgment calls based on an imperfect dataset are exactly the kind of determinations that the ALJ is entrusted to make. Accordingly, the Commissioner's final decision must be affirmed.

## IV. <u>CONCLUSION</u>

The ALJ applied the correct legal standards and supported his decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. The Commissioner's motion is GRANTED;

2. Plaintiff's motion is DENIED;

3. The Commissioner's final decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: January 31, 2024
Utica, New York.

*David N. Hurd*
U.S. District Judge